# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 11-21158-TLM |
| JAMES P. MAREK and ) | |
| CARRIE A. MAREK, ) | Chapter 7 |
| ) | |
| Debtors. ) | |
| _____ ) | |
| ) | |
| KILLGORE ADVENTURES, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. No. 11-07035-TLM |
| ) | |
| JAMES P. MAREK and ) | |
| CARRIE A. MAREK, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## MEMORANDUM OF DECISION

**INTRODUCTION**

In this adversary proceeding, Plaintiff Killgore Adventures, LLC ("Killgore), seeks a determination that its claim against Debtors, which is based on an Idaho state court judgment, is excepted from discharge under § 523(a)(2)(A).[1]

---

[1] Unless otherwise indicated, all statutory citations in this Decision are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all rule references are to the Federal Rules of
(continued...)

MEMORANDUM OF DECISION - 1

Before the Court is Killgore's motion for summary judgment based on the doctrine of issue preclusion. Doc. No. 10 ("Motion"). Hearing on the Motion was held on February 7, 2012, and the matter was taken under advisement. For the reasons discussed below, Killgore's Motion will be granted.

**FACTS**[2]

On July 21, 2009, Killgore sued Debtors in Idaho state court for fraud and breach of contract. A trial on Killgore's claims was held on January 18 and 28, 2011, at which Debtors appeared *pro se*. On May 13, 2011, the state court entered its "Amended Findings of Fact, Conclusions of Law, and Order" disposing of the several matters that had been tried before it. *See* Doc. No. 13-1 ("Findings and Conclusions"). Therein, the state court concluded that Debtors had committed fraud on Killgore with respect to the sale and purchase of seven longhorn cattle – PCC Commander, Red/White Camper, Black Lady, Little Hot Shot, Wiregrass Wendy, Black Haddie, and Ruby Red. Specifically, the court found that Debtors had misrepresented to Killgore the horn span of PCC Commander, the lineage and registration of Red/White Camper, Black Lady, and Little Hot Shot, and the

---

[1](...continued)
Bankruptcy Procedure, Rules 1001-9037.

[2] The facts are gleaned from Killgore's Statement of Asserted Undisputed Facts, Doc. No. 11, and Debtors' response thereto, Doc. No. 17, as well as certified copies of the "Amended Findings of Fact, Conclusions of Law, and Order" and "Judgment" entered by the Idaho state court, which Killgore submitted in support of its Motion. Doc. Nos. 13-1, 13-2.

MEMORANDUM OF DECISION - 2

vaccination histories of Red/White Camper, Little Hot Shot, Wiregrass Wendy, Black Haddie, and Ruby Red.[3] Based on its Findings and Conclusions, the state court entered judgment in favor of Killgore on August 12, 2011, in the amount of $48,255.00 for damages stemming from Debtors' fraud and intentional misrepresentation, $1,442.50 for breach of contract, $1,175.29 for costs, and

---

[3] The state court explained the significance of these misrepresentations in its Findings and Conclusions:

> Texas longhorn cattle are bred for show and other purposes in many areas of the country, most particularly in Texas and Oklahoma. Numerous auctions are held for the breed in various locales across the country. There are currently two organizations that maintain longhorn registries. The two most important factors in establishing a particular cow's value are pedigree and horn length. A proven high-quality bloodline increases the value, as does a greater horn length. Horn size is determined by at least 3 measurements: (1) tip-to-tip (TTT), which is the most important measurement; (2) total length along contour; and (3) girth. A small percentage of longhorn bulls, less than 10%, have TTT measurements of at least 75 inches. Breeding bulls of that measure are therefore prized, as their offspring are deemed more likely to inherit the greater horn length gene.
>
> . . . To be registered, a cow must be the product of a sire and dam that are both registered and all cattle seeking registration must be branded with a holding brand and a private herd number, which are included on the registration documents. Cattle that do not have a valid and proven pedigree cannot be registered.
>
> Longhorns, like all cattle in Idaho, must be vaccinated for Brucellosis at or before sale or transport into Idaho. Upon vaccination, a tattoo specific to the veterinarian performing the service is placed inside the cow's ear. In addition, a metal tag containing unique information and providing more detail to allow tracing of a particular cow's ownership and history is attached to the ear. Cows are usually vaccinated after reaching one year of age and then again within the next year. Adult cows that have not been vaccinated cannot be sold or transported into or out of Idaho. On a cow-by-cow basis, the Idaho Department of Agriculture may give permission to vaccinate an adult cow.
>
> Non-vaccinated longhorns may not be sold at a registered longhorn auction.

Doc. No. 13-1 at 4-5.

MEMORANDUM OF DECISION - 3

$51,440.75 for attorney's fees. Doc. No. 13-2 ("Judgment").

On September 2, 2011, Debtors filed a voluntary petition under chapter 12 of the Bankruptcy Code. Killgore filed this adversary proceeding on December 5, 2011, seeking to have the fraud portion of its state court judgment against Debtors excepted from discharge under § 523(a)(2)(A). Killgore now moves the Court for summary judgment in its favor, asserting that the state court's Findings and Conclusions and accompanying Judgment preclude re-litigation of its § 523(a)(2)(A) claims under principles of issue preclusion. Debtors oppose the motion.[4]

**STANDARDS FOR SUMMARY JUDGMENT**

Summary judgment is to be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), incorporated by Fed. R. Bankr. P. 7056. A dispute is genuine if there is sufficient evidence for a reasonable fact finder to hold

---

[4] Debtors' response to Killgore's Motion, filed on January 31, 2012, did not comply with LBR 7056.1. That Rule requires an opposing party to file a responsive brief and a statement of disputed and undisputed facts at least fourteen (14) days prior to the hearing set on a motion for summary judgment. It further requires that the opposing party's statement of disputed and undisputed facts respond to each of the moving party's asserted undisputed facts, specifically identifying whether such fact is disputed or undisputed, and, if disputed, providing a specific citation to an affidavit, deposition, or other portion of the record establishing the basis of the dispute. Debtors' responsive brief and statement of facts were filed just 7 days before the hearing on Killgore's Motion, and Debtors' statement of facts fell well short of the substantive requirements of the Local Rule. Such noncompliance is unacceptable and may potentially result in a continuance of the hearing, the treatment of the moving party's asserted facts as undisputed, or the imposition of costs, attorney's fees or other sanctions on the party, its counsel, or both. *See* Fed. R. Bankr. P. 7056(e); LBR 7056.1(e).

MEMORANDUM OF DECISION - 4

in favor of the non-moving party, and a fact is material if it might affect the outcome of the proceeding. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001). The Court cannot and does not weigh evidence in resolving motions for summary judgment but, rather, determines only whether a material factual dispute exists requiring trial. *Thorian v. Baro Enters., LLC (In re Thorian)*, 387 B.R. 50, 61 (Bankr. D. Idaho 2008) (citing *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997)). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998). When issue preclusion bars the parties from relitigating material issues, summary judgment may be granted. *Ross v. Alaska*, 189 F.3d 1107, 1113 (9th Cir. 1999).

## DISCUSSION AND DISPOSITION

### A. Issue Preclusion

The doctrine of issue preclusion applies in § 523 nondischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991); *Diamond v. Kolcum (In re Diamond)*, 285 F.3d 822, 826-28 (9th Cir. 2002). A party asserting issue preclusion carries the burden of pinpointing the exact issues litigated in the prior action and introducing a record revealing the controlling facts. *Kelly v. Okoye (In re Kelly)*, 182 B.R. 255, 258 (9th Cir. BAP 1995), *aff'd*, 100 F.3d 110 (9th Cir. 1996). Reasonable doubts concerning what was decided in the prior

action must be resolved against the party asserting preclusion. *Id.*

The preclusive effect of a state court judgment in a nondischargeability proceeding is determined by the preclusion rules of the state in which the judgment was issued. 28 U.S.C. § 1738; *Gayden v. Nourbakhsh (In re Nourbakhsh)*, 67 F.3d 798, 800 (9th Cir. 1995). Under Idaho law, issue preclusion is appropriate when

> (1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation.

*Bach v. Bagley*, 229 P.3d 1146, 1157 (Idaho 2010).

### B. Fraud under § 523(a)(2)(A)

Section 523(a)(2)(A) excepts from an individual debtor's discharge under § 1228 any debt "for money, property, services, or an extension, renewal, or refinancing of credit . . . obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." To prevail on a claim under § 523(a)(2)(A), a plaintiff must prove, by a preponderance of the evidence,

> (1) misrepresentation, fraudulent omission, or deceptive conduct by the debtor in obtaining money, property, services or credit; (2) debtor's knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor

MEMORANDUM OF DECISION - 6

proximately caused by such statement or conduct.

*Fetty v. D.L. Carlson Enters., Inc. (In re Carlson)*, 426 B.R. 840, 854 (Bankr. D. Idaho 2010) (citing *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000)).

Killgore contends that the state court's fraud judgment precludes re-litigation of the elements of its § 523(a)(2)(A) claim, thus entitling it to summary judgment. In Idaho, nine elements must be proven by clear and convincing evidence to sustain a cause of action for fraud: "1) a statement or a representation of fact; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of its falsity; 5) the speaker's intent that there be reliance; 6) the hearer's ignorance of the falsity of the statement; 7) reliance by the hearer; 8) justifiable reliance;[5] and 9) resultant injury." *Taylor v. McNichols*, 243 P.3d 642, 661-62 (Idaho 2010); *Country Cove Dev., Inc. v. May*, 150 P.3d 288, 293 (Idaho 2006).

Despite acknowledging at hearing that the elements of fraud under Idaho law track those of § 523(a)(2)(A), Debtors advance two arguments in opposition to Killgore's Motion. Debtors first claim that certain portions of the $48,255.00 in fraud damages awarded to Killgore in state court – $11,785.00 for representations concerning the lineage of Black Lady and $250.00 for representations regarding

---

[5] Idaho courts have also referred to this element as "the hearer's right to rely." *Country Cove Dev., Inc. v. May*, 150 P.3d 288, 293 (Idaho 2006); *see* Doc No. 13-1 at 12.

MEMORANDUM OF DECISION - 7

the vaccination histories of Red/White Camper, Little Hot Shot, Wiregrass Wendy, Black Haddie, and Ruby Red – were not, in fact, based on fraud.  Debtors' argument, however, is belied by the state court's Findings and Conclusions.  There, the court expressly found that Killgore had been damaged in the amount of $11,785.00 as a result of Debtors' misrepresentations concerning the cow Black Lady.  Doc. No. 13-1 at 17, 21-22.  The court further concluded that Killgore's $250.00 in damages for the non-vaccinated cows were "a proximate result of the misrepresentation by Marek that the cows had been vaccinated and met the State's requirements for import."  *Id.* at 20.  Thus, the record sufficiently demonstrates that the subject damages challenged were indeed awarded on the basis of fraud.

Moreover, to the extent Debtors are acknowledging that the state court did award the damages for fraud but contending that it erred in doing so because Killgore's damages were not proximately caused by Mr. Marek's misrepresentations (a position suggested by Debtors' brief), such an argument is unavailing.  The Court here is presented with a final judgment which, even if erroneous, must be accorded full faith and credit.  *See Molina v. Seror (In re Molina)*, 228 B.R. 248, 250 (9th Cir. BAP 1998).  Any contention by Debtors that the state court committed error in its ruling should have been made on direct review through the proper appellate channels.  Such assertions can not, and will

MEMORANDUM OF DECISION - 8

not, be entertained by this Court on a collateral attack.[6]

For similar reasons, Debtors' second argument – that Killgore should be denied the preclusive effect of its Judgment because the state court misapplied the burden of proof and failed to identify evidence sufficient to support its findings – must also be rejected.[7] This argument effectively invites the Court to find error with the state court's decision. However, as noted above, this invitation is misplaced. That Debtors perceive error in how the state court reached its conclusions is irrelevant in determining the preclusive effect of Killgore's state court Judgment. Even if erroneous, an issue this Court does not address, the Judgment will have preclusive effect if it satisfies the issue preclusion elements under Idaho law. *Id.*

Killgore has demonstrated that issue preclusion properly applies in this case. Debtors were parties to the state court litigation and had a full and fair opportunity to litigate before that court. They appeared at the trial and presented both evidence and argument. In passing on the merits of Killgore's fraud claims under Idaho law, the state court necessarily decided all the elements required to

---

[6] To be clear, in determining the preclusive effect of the state court judgment this Court need not, and does not, express any opinion regarding the alleged errors in the state court's ruling.

[7] In particular, Debtors contend that the state court failed to identify evidence to support its findings that Killgore had justifiably relied on Mr. Marek's representations concerning the bull PCC Commander and the cow Little Hot Shot. They also argue that the state court erred by placing on them the burden to prove Killgore's reliance was not justifiable.

MEMORANDUM OF DECISION - 9

prove nondischargeability under § 523(a)(2)(A). And the issue of fraud was actually and finally decided by a Judgment based on the state court's Findings and Conclusions.

**CONCLUSION**

Based on the foregoing, Killgore's Motion for Summary Judgment will be granted. The fraud portion of Killgore's state court judgment, totaling $48,255.00, will be excepted from Debtors' discharge under § 523(a)(2)(A).[8] Killgore's request for attorney's fees incurred in this action will be denied as no basis for such an award has been identified. *See Kilborn v. Haun (In re Haun)*, 396 B.R. 522, 528 (Bankr. D. Idaho 2008). Costs will be awarded to Killgore pursuant to Fed. R. Bankr. P. 7054 and LBR 7054.1.

Counsel for Killgore shall submit an order and judgment consistent with this Decision.

DATED: February 23, 2012

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

---

[8] In this nondischargeability proceeding Killgore has not pursued those portions of the state court judgment related to breach of contract, costs or attorney's fees.

MEMORANDUM OF DECISION - 10